STATE BOARD OF HEALTH *v.* MAYOR AND COMMISSIONERS OF WESTERNPORT

[No. 49, September Term, 1958.]

*Decided December 19, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND and HORNEY, JJ., and HENRY, JR., Chief
Judge of the First Judicial Circuit, specially assigned.

*Joseph S. Kaufman, Assistant Attorney General,* with
whom were *C. Ferdinand Sybert, Attorney General,* and
*Cobey, Carscaden, Gilchrist & Getty* on the brief, for appel-
lant.

*Earl Edmund Manges,* for appellee.

HENRY, Chief Judge of the First Judicial Circuit, by spe-
cial assignment delivered the opinion of the Court.

The Town of Westernport (hereinafter referred to as
Town), a municipality situated on the north bank of the
Potomac River, in Allegany County near the Garrett County
line, has, since 1951, been supplying water to its residents
through a transmission line from the Savage River Dam lo-
cated some six miles distant. For many years prior to the
1951 completion of the Savage River Dam, Town had re-
ceived its water from the Savage River and had used the
same transmission line.

Over a period of years, Town has permitted persons outside the city limits along the course of the transmission line to tap into the transmission line for an initial fee for the right to tap the line plus a periodic charge for water supplied. At the time of bringing this action there were nineteen such users of the water. In addition to these persons Town has permitted the West Virginia Pulp and Paper Company which employs some seventy-five people to tap the line free of charge and also has contracted with the Town of Bloomington to supply its water requirements from the transmission line.

It was stipulated by both sides that the water at the Savage River Dam is polluted and unsafe for drinking purposes without being chlorinated or boiled. In fact, Town has been chlorinating the water at the Savage River Dam since 1951 and prior to that at the reservoir which the Dam supplanted.

On November 1, 1955, the State Board of Health (hereinafter referred to as the Board), after many years of negotiating with Town, issued a permit to erect a water filtration plant in accordance with specifications submitted by Glace and Glace, Inc., engineers. The specifications called for installation of chlorinators at the filtration plant which was to be constructed inside the city limits.

Pursuant to the permit, Town has since constructed the filtration plant and has given individual notice to the nineteen users along the transmission line of its intention to discontinue chlorination at the Savage River Dam. The notice also contained an offer to supply raw water for a nominal charge upon the users' execution of an agreement with Town whereby the latter "will not be held liable for any illness resulting from the use of the raw water." In event of failure to enter into the agreement, the users were given ninety days notice of discontinuance of water service.

West Virginia Pulp and Paper Company and the Town of Bloomington have made their own arrangements for chlorinating water from the transmission line since construction of the filtration plant.

On August 30, 1955, prior to the issuance of the permit, the Board wrote Glace and Glace, Inc., "Considering the possibility of by-passing the plant, provisions should be made

to apply chlorine on the line entering the reservoir unless the raw water will be chlorinated at the Savage River Dam."

On September 8, 1955, Glace and Glace, Inc., replied: "It is the intention to maintain the existing chlorinator at the Savage River Dam so that raw water may be chlorinated when the filter plant is by-passed."

Subsequent to the issuance of the permit to build the filtration plant, there has been much negotiation between Town and the Board concerning continuance of the operation of the chlorination plant at the Savage River Dam. Town has agreed to continue operating the chlorination plant at the Savage River Dam if the nineteen users will pay the operating expenses.

The alternatives apparently open to the nineteen users are to install individual chlorination systems or to develop private water systems. From the evidence, it appears that the first of these alternatives is not practical in that private systems are not dependable, and the second is not feasible for at least one of the users, in that the terrain is such that it would be so expensive that from a practical point of view it would be prohibitive. However, it does not appear that the possibilities of the second plan have been exhausted.

Pending the result of this litigation, Town is continuing to operate the chlorination plant at the Savage River Dam.

The Board seeks temporarily and permanently to enjoin and restrain Town from discontinuing the chlorination of the raw water supply at the Savage River Dam.

The question presented in this case is in reality a very narrow one. It is whether or not the State Board of Health can require the Mayor and Commissioners of Westernport to supply water at all to the 19 users outside the corporate limits of the Town. If this question is answered in the negative, as we think it must be, and Town should undertake to furnish the water on a voluntary basis, the further question would then arise whether or not the Board can require Town to chlorinate or otherwise purify the water furnished, or in the alternative enjoin it from furnishing any water. This subsidiary question we think must be answered in the affirmative.

The power and authority of the Mayor and Commissioners

of Westernport to furnish water and to operate a water system is contained in Article one, Section 577, in the Code of Public Local Laws of Allegany County, Maryland, 1955 Edition, the pertinent part of which reads as follows:

"The Mayor and Commissioners of Westernport shall have full power and authority to contract with any body corporate, individuals or governmental body or agency or other persons in order to establish, operate and maintain a complete system of water works for the *Town of Westernport,* and shall have power to regulate the erection and management of the same by orders or ordinances pertaining thereto * * *." (Emphasis supplied.)

There is nothing in Town's charter which requires it to furnish water to users outside of its corporate limits, and the question has been raised as to whether or not it is *ultra vires* for Town to do so. We do not think it necessary in this case to determine this question, because even if we assume, without deciding, that it is not *ultra vires* for Town to furnish water to customers outside its limits, we find no power in the State Board of Health to require it to do so.

State Board of Health can order that public sources of water supply be closed or in the alternative that measures be taken to abate the situation where there is a danger to public health, either existing or prospective. Code (1957), Art. 43, § 398:

"Whenever the State Board of Health shall find that the water or ice from any public or private source of water or ice supply is or is likely to become, dangerous to health, * * * it shall order that said source of water or ice supply shall be closed, * * * or the Board may order that such works or devices shall be installed, or such measures instituted, as shall be sufficient to remedy existing conditions, if in its judgment such conditions can be remedied in a practical manner by said works, devices or measures."

(See also §§ 388, 391, 392 and 393 of Art. 43.)

*Board of Health v. Crew,* 212 Md. 229, 238-239, 129 A. 2d 115 (1957), upheld a kindred statute (Code [1951], Art. 43, § 377) which forbids the use of a well that is, or *may* become, prejudicial to health, when there is a public water supply directly available. The court said that "* * * [p]rotection of the public health is not required to wait until contamination is shown to exist."

We conclude that the Board has no power to compel Town to furnish water at least to persons outside the Town limits, but if Town voluntarily undertakes to furnish such water Board may compel Town to chlorinate or otherwise purify it.

> *Order reversed, and case remanded for the entry of an order not inconsistent with this opinion, costs to be paid by appellant.*